WILLIAM T. ELLIOTT *vs.* HAMILTON MUTUAL INSURANCE COMPANY.

An application for insurance, in which the applicant agrees that it is " a correct description of the property, so far as regards the condition, situation, value and risk on the same," and that " the misrepresentation or suppression of material facts shall destroy his claim for damage or loss," is not a warranty of the truth of the answers to interrogatories in it, except so far as they are material to the risk; although the by-laws, to which the insurance is expressly made subject, provide that the application shall be held to be a part of the policy and " a warranty on the part of the assured, " and that " unless the applicant shall make a correct description and statement of all facts inquired for in the application, and also all other facts material in reference to the insurance, or to the risk, the policy shall be void." And the materiality of any answer is to be determined by the jury.

An application for insurance on a stock of goods represented that it was " all of goods usually kept in a country store," and that there was no " cotton, or woollen waste or rags kept in or near the property to be insured." The by-laws, to which the insurance was expressly made subject, provided that no building in which cotton or woollen waste or oily rags were allowed to remain at night should be insured; and that all cotton, woollen, hempen or oily waste, or rags, should be destroyed or removed every evening. *Held,* that the keeping of clean white cotton rags, if usually forming part of the stock of " a country store," did not avoid the policy.

ACTION OF CONTRACT upon a policy of insurance on the plaintiff's stock of goods in his shop in Meredith Village, N. H., " under the provisions, conditions and limitations of the charter and by-laws of said company." Upon the face of the policy was this clause : " This policy is accepted by the insured, subject at all times to the conditions and regulations of the act of incorporation and by-laws of said company for the time being in force, which conditions and regulations are hereby declared to form a part hereof."

The by-laws contained these provisions : " ART. 6. The application upon which a policy is founded shall be held to be a warranty on the part of the assured, and as absolutely a part of said policy and of the contract of insurance as if it were actually incorporated therein in full."

" ART. 13. Unless the applicant for insurance shall make a correct description and statement of all facts inquired for in the application, and also all other facts material in reference to the

insurance, or to the risk, or the value of the property, the policy issued thereon shall be void."

" ART. 28. No building in which cotton or woollen waste or oily rags are allowed to remain at or during the night shall be insured in this company. All damaged cotton or hemp, and all cotton, woollen, hempen or oily waste, or waste used about oils or mineral acids, or rags, shall be destroyed or removed to a safe distance from the premises insured, or to some place fireproof, every evening before dark."

At the head of the application for insurance was this notice : " No buildings will be insured by this company where cotton waste is kept." The application contained numerous printed questions and written answers, among which were these : " 8. Is cotton, or woollen waste or rags kept in or near the property to be insured ? " *Answer.* " None." " 9. Of what does the stock in trade on which insurance is desired, consist ? " *Answer.* " All of goods usually kept in a country store." Above the applicant's signature were printed these provisions : " And the applicant covenants and agrees with said company, that the foregoing is a correct description of the property requested to be insured, so far as regards the condition, situation, value, title and risk on the same ; " " that he holds himself bound by the act of incorporation and by-laws of said company ; " and " that the misrepresentation or suppression of material facts shall destroy his claim for a damage or loss."

At the trial in the court of common pleas in Essex, before *Mellen,* C. J., the plaintiff, who was the only witness examined on either side, testified that his business was " that of an ordinary country variety store ; that from the date of the policy until the fire it was a part of his business to buy clean rags, in small quantities, and keep them until they amounted to some hundred or two hundred pounds, when he sold them ; that at the time of the making of the application there were no rags on the premises or in the store, the last, amounting to some 200 pounds, more or less, having been sold some days previous ; that, about the time he cleared out his stock, he made a bin for the purpose, among other things, of putting rags in, which he

afterwards used for that purpose; that after the issuing of the policy, rags were again taken into the store until the time of the fire, so that, at the time of the fire, he had about two thousand pounds in the store; that they were all clean, white rags; and that, in the ordinary course of business, rags were not kept, except for immediate sale."

Upon this proof, the defendants contended that the answer to the eighth interrogatory in the application constituted a warranty, not only that no rags were kept in or near the insured property at the time said application was made, but also a warranty that none should be kept there during the continuance of the policy; and that the keeping of rags on the premises, as disclosed by the evidence, after the making of the policy, was a breach of said warranty, and avoided the policy.

The plaintiff controverted this position; and contended that said question and answer amounted, at the most, to a warranty that no rags were kept on the premises at the time when said policy was made; and that, in the absence of fraud, (which was not suggested,) the policy would not be avoided by keeping rags there afterwards.

The plaintiff also contended that said interrogatory did not apply to clean white rags, but that the word "rags" should be construed according to the words used in connection with it; and he offered to prove that "cotton and woollen waste" was a peculiarly hazardous article, being the waste of manufacturing establishments, generally oily and dirty; and also offered to prove, by the testimony of persons acquainted with insurance business, that the word "rags," used in this connection in an application for insurance, would be understood as applying only to oily rags, or rags used about machinery, and not to clean rags. But the court rejected this evidence; and ruled that, as matter of law, the word applied to clean, as well as to oily or dirty rags.

The plaintiff then contended that in fact he did disclose to the defendants that clean rags formed part of his ordinary stock in trade; and offered to prove that clean rags are uniformly part of the stock of "goods usually kept in a country

store," precisely as these were kept; and claimed the right of submitting to the jury the question, whether or not, taking the whole application together, and more particularly the eighth and ninth answers, the fact that rags were part of his stock in trade was disclosed. And he tendered parol evidence to explain this answer, by showing that it was equivalent to saying "all the goods usually kept in a country store, to wit, hardware, groceries, dry goods, rags, &c." But the court rejected all this evidence; and ruled that no question of fact was open upon the construction of this application, and that the answer to the ninth interrogatory did not affect the construction to be given to the eighth answer.

Upon the construction of the eighth interrogatory and answer, the plaintiff contended that, if they were to be considered a continuing warranty, he had only warranted that things should remain substantially as they were, and not that there should be absolutely no variation; and that, in order to avoid the policy, the defendants must show that there had been a substantial alteration, affecting the risk; and he offered to prove, by the testimony of experts, that clean rags were not hazardous, nor deemed to be such by underwriters, and that the risk was no greater with these rags than without them.

But the court excluded this evidence also, and stated that the jury would be instructed, " that this application (being made part of the policy) contained a warranty that no rags, of any kind, were kept in or near the insured property, either for storage or for sale, and an agreement that none should be so kept; that if it was part of the plaintiff's business, from a time prior to the making of the policy until the time of the fire, to take in rags, either for storage or on sale, and keep them till they amounted to, say one hundred pounds, and then to sell them, even though he had none when the application was made, then there was a breach of that warranty, the policy did not attach, and the plaintiff could not recover; and that it was immaterial whether the risk was greater by reason of the introduction of these rags, or whether they in fact caused the fire."

The plaintiff thereupon submitted to a verdict for the defend-

ants, and alleged exceptions, which were argued in Essex at November term 1858.

*S. B. Ives, Jr. & J. B. Peabody,* for the plaintiff.

*O. P. Lord & J. W. Perry,* for the defendants. The answer to the eighth interrogatory was a continuing warranty, or, at least, a warranty that it was not, at the time of the application, the habit of the applicant to keep rags on the premises as a part of his business, and does not refer to the question whether rags happened to be there at the moment when the application was signed. *Houghton* v. *Manufacturers' Mutual Fire Ins. Co.* 8 Met. 114. *Crocker* v. *People's Mutual Fire Ins. Co.* 8 Cush. 79. *Glendale Woollen Co.* v. *Protection Ins. Co.* 21 Conn. 19. *Sheldon* v. *Hartford Fire Ins. Co.* 22 Conn. 235.

The evidence offered and rejected was immaterial. The eighth interrogatory being specific and the answer clearly false, and the by-laws declaring the policy void if all the facts inquired for are not truly stated, the policy is void whether the facts are material or not; or rather the parties have agreed upon the materiality of the facts inquired for and stated, and they shall not now be allowed to prove them immaterial. 6th and 13th by-laws. *Davenport* v. *New England Mutual Fire Ins. Co.* 6 Cush. 340. *Miles* v. *Connecticut Mutual Life Ins. Co.* 3 Gray, 580. *Burritt* v. *Saratoga County Mutual Fire Ins. Co.* 5 Hill, 188. *Trench* v. *Chenango County Mutual Fire Ins. Co.* 7 Hill, 122. *Jennings* v. *Chenango County Mutual Fire Ins. Co.* 2 Denio, 75. *Wilson* v. *Herkimer County Mutual Ins. Co.* 2 Selden, 53.

The true construction of the eighth and ninth interrogatories and answers is, that in the course of the business the stock should consist of "goods usually kept in a country variety store," but that no woollen or cotton rags or waste should be kept. The insertion of a comma after the word "cotton" does not prevent its applying to the word "rags." *Manning* v. *American Board of Commissioners for Foreign Missions,* 8 Met. 566.

The words "oily" and "dirty" cannot be imported into the application by parol evidence; nor by reference to the twenty-eighth by-law, which applies only to a case where rags are allowed to be used on the premises.

BIGELOW, J.   The rulings of the court at the trial of this case were erroneous in several particulars.

The plaintiff, by his answers to the questions contained in the application, does not warrant that they are literally and absolutely true.   Such might be the rule if they stood alone, unexplained by other stipulations in the application.   But the whole paper is to be construed together, and effect is to be given to all, its parts, if it can be done consistently with a fair and reasonable interpretation of the contract.   We think the answers are qualified by the agreement which immediately follows them, and that the extent to which the assured is to be held responsible for their accuracy and truth is clearly indicated and fixed by the stipulation which he there makes.   He agrees that the description of the property contained in his answers is correct only " so far as regards the condition, situation, value, title and risk on the same," and " that the misrepresentation or suppression of material facts shall destroy his claim for damage or loss."   These stipulations were not only unnecessary, if the assured was to be held to the literal and exact truth of his answers, but are inconsistent with holding them to be strict warranties.   The parties to the contract did not so regard them. It was only so far as they were material to the risk, or were misrepresentations or suppressions of material facts, that they were intended to affect the rights of the assured to recover on the policy.   The plaintiff was therefore entitled to have the question, whether the rags kept in the store at the time of the fire materially affected the risk, passed upon by the jury.

This case differs from *Bowditch Mutual Fire Ins. Co.* v. *Winslow*, 3 Gray, 415, and 8 Gray, 38.   In that case, the misrepresentation relied on related to the amount of incumbrances on the property, and affected only the title of the party insured.   The covenant at the end of the application did not extend to representations concerning the title, but only to those affecting " the condition, situation, value and risk of the property ; " the amount of incumbrances could hardly be material to the risk, and the by-laws expressly provided that the policy should be

Elliott v. Hamilton Mutual Insurance Company.

void unless the true title of the assured was expressed in the application. The assured in that case, therefore, were properly held to the strict truth of the statements as to the amount of incumbrances.

The construction put on the eighth interrogatory by the court was incorrect. If interpreted literally and according to the punctuation, as printed in the application, it would include only " woollen rags," and not those made of cotton. But if the latter are comprehended within the fair scope of the question, we think it can extend only to those which, from their nature or condition, are easily inflammable, and for that reason classed with " cotton and woollen waste." Clean white rags would not come within this description. This view is confirmed by the twenty-eighth article of the defendants', by-laws, annexed to the policy, in which it is provided that " no building in which cotton or woollen waste or oily rags are allowed to remain over night shall be insured by this company." We think it reasonable to infer that the eighth interrogatory was put with special refer- ence to this clause in the by-laws, and that it is to be construed in connection with it as including only " oily rags."

It follows, that it was competent for the plaintiff to show that clean white rags commonly formed part of the stock of country stores, and that in this respect he had complied with the statement made in answer to the ninth interrogatory, by which his stock was described as being that which was usually kept in a country store. *Exceptions sustained*